IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Julie Vess, | Case No. 3:11 CV 2549 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Scott Medical Corporation, et al., | |
| Defendant. | |

Before this Court is Defendants Select Medical Corporation and Regency Hospital of Toledo, LLC's Motion for Summary Judgment (Docs. 14–15), Plaintiff Julie Vess' Opposition (Doc. 26), and Defendants' Reply (Doc. 27). This Court held a record hearing on the pending Motion (2/21/13 docket entry). For the following reasons, the Motion is granted in part and denied in part. By agreement of the parties, this case will be transferred to Magistrate Judge Knepp for trial.

**BACKGROUND FACTS**

Defendants opened Regency Hospital in Toledo, Ohio in 2007. Defendants hired Plaintiff as the director of respiratory therapy at the hospital in March 2007. She most recently held the position of a respiratory therapist team leader. Plaintiff was a working manager, spending time on the floor caring for patients in addition to her managerial responsibilities overseeing respiratory therapists.

On February 8, 2011, Plaintiff injured her right knee when she fell in the parking lot at the hospital. Plaintiff immediately notified her supervisor, Verette Neeb, who advised her to fill out an incident report and seek medical assistance. Plaintiff's injury required surgery, and she sought and was granted thirteen weeks of FMLA leave by Defendants. Plaintiff filed for, and ultimately received, workers' compensation benefits.

Andrea Sheehy, a rehabilitation manager with Defendants, covered Plaintiff's management duties during her FMLA leave. Neeb advised respiratory therapists normally supervised by Plaintiff to contact Sheehy with questions while Plaintiff was on leave. During her FMLA leave, respiratory therapists, Sheehy and Neeb contacted Plaintiff at home about various work-related matters.

Plaintiff had knee surgery on March 30, and returned to her position with minor restrictions on May 10. Shortly after returning from FMLA leave, on May 12, an incident occurred at the hospital when Plaintiff thought Dr. Yoon, a pulmonologist, confused the ventilation orders for two patients. After reviewing reports documenting the incident, Defendants suspended and then ultimately terminated Plaintiff on May 27 for practicing outside the scope of her license.

Plaintiff claims Defendants interfered with her rights under the FMLA and terminated her in retaliation for taking FMLA leave and filing a workers' compensation claim.

### SUMMARY JUDGMENT STANDARD

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**DISCUSSION**

**Count One: FMLA Claims**

Plaintiff presents three claims under which Defendants violated her rights under the FMLA: (1) FMLA discouragement; (2) FMLA interference, and (3) FMLA retaliation.

*FMLA Discouragement*

Plaintiff proceeds with a "discouragement" theory of interference, arguing Defendants' actions caused Plaintiff to feel compelled to work while on leave because she believed her job was in jeopardy as a result of taking FMLA leave (*see* Doc. 26 at 5–7). Courts require a plaintiff pursuing a discouragement theory to offer evidence she tried to assert her FMLA rights and was discouraged, unless the employer's actions would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise her FMLA rights. *Golden v. N.Y. City Dep't of Envtl. Prot.*, 2007 WL 4258241, at *3 (S.D.N.Y. 2007).

Plaintiff testified that other employees were informing her that Neeb was going to replace Plaintiff (Doc. 21, Vess Dep. at 87–88). After Plaintiff heard the rumor, she contacted Sue Koester, Defendants' human resources manager, who assured Plaintiff that her position was being held open for her (*id.* at 98–99). The evidence cited by Plaintiff is not conduct that "would have dissuaded a similarly situated employee of ordinary resolve from exercising his FMLA rights." *Golden*, 2007 WL 4258241, at *3. Defendants approved Plaintiff's FMLA leave, confirmed through the human resources manager that Plaintiff's position would be held open, and Plaintiff was, in fact, reinstated at the completion of her leave. Summary judgment is granted with respect to her discouragement theory.

3

*FMLA Interference*

The FMLA entitles qualifying employees to take up to twelve weeks unpaid leave, without fear of termination, when the leave is taken for a serious health condition. 29 U.S.C. §§ 2612(a)(1)(D) & 2614(a)(1). The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing]" the exercise of a right under the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, Plaintiff must establish: (1) she is an eligible employee; (2) Defendant is an FMLA-qualifying employer; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2008). The parties dispute only the fifth element -- whether Defendants' contacts with Plaintiff during her leave period constitutes a denial of benefits.

This Court rejects Defendants' argument that Plaintiff has not alleged any right protected by the FMLA simply because Defendants approved Plaintiff's request for FMLA leave. *See Schmauch v. Honda Am. Mfg., Inc.*, 295 F. Supp. 2d 823, 829 (S.D. Ohio 2003). Regulations describe various ways an employer can "interfere" with the exercise of an employee's FMLA rights. Plaintiff, however, must put forward evidence that Defendants actually interfered with her FMLA leave. Plaintiff contends Defendants interfered with her FMLA leave by continually contacting her about work-related matters during her leave period. In support of this claim, Plaintiff cites the following record evidence:

- Plaintiff responded to phone calls from respiratory therapists concerning scheduling and testified she reminded them to work through Sheehy (Vess Dep. at 80, 83).

- Plaintiff took phone calls from Neeb and Sheehy concerning Plaintiff's responsibilities that needed to be covered during her absence (*id.* at 83–84). During one phone call, she gave Neeb and Sheehy her computer password and identified respiratory therapists to assume responsibilities for certain aspects of her department during her absence (*id.* at 86–87). This phone call lasted about one hour (Doc. 22, Neeb Dep. at 92).

- Defendants required her to complete certain educational competencies. Plaintiff testified she spent a lot of time on the phone during her FMLA leave completing the competencies, including "a large amount of [her] day" on February 23 (Vess Dep. at 84). Plaintiff testified Neeb told her this training needed to be completed before she returned to work from FMLA leave (*id.* at 85–86). Plaintiff also completed RT training on April 11 (Doc. 33-1, Ex. 3). However, Neeb testified she never told Plaintiff the training needed to be completed in advance of her return (Neeb Dep. at 97).

- Plaintiff talked to Sheehy for an hour about inputting Blood Gas Proficiency testing numbers, and she then input those number into the computer herself so that Defendants could remain compliant with the American Proficiency Institution (Vess Dep. at 106–08). This activity took another hour (*id.* at 108).

- Neeb and Sheehy asked Plaintiff to prepare a list of her duties (*id.* at 109).

- Defendants required her to work with Sheehy over the phone for about an hour to submit evaluations of respiratory therapists under her supervision (*id.* at 100–02).

- Plaintiff told Sheehy during a phone call that she should be directing questions to the respiratory therapists assigned to cover Plaintiff's responsibilities on certain subject matters rather than calling Plaintiff (*id.* at 111).

The ability to take FMLA leave is not conditioned upon the willingness of the employee to remain "on call" to the employer. *Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 70 (D. Mass. 2000). For example, in *Arban v. West Publ'g Corp.*, 345 F.3d 390, 402–03 (6th Cir. 2003), the employer asked plaintiff to perform work-related tasks while on FMLA leave, and the court found this to interfere with his FMLA rights. However, "[f]ielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights." *Reilly v. Revlon, Inc.*, 620 F. Supp. 3d 524, 537 (S.D.N.Y. 2009). When such contact

5

is "limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such calls." *Id.* Thus, communications between Plaintiff and Neeb, Sheehy, and other employees for the purpose of facilitating the transition to Plaintiff's responsibilities, such as providing a computer password and identifying employees to fill in for Plaintiff, did not interfere with her FMLA leave as a matter of law.

Plaintiff's testimony however revealed something more: namely, that Neeb and others requested Plaintiff complete training prior to her return from leave, complete reviews of respiratory therapists and enter blood gas data. The additional testimony, when considered in the aggregate, exceeds the limited scope of passing along institutional knowledge and providing closure on completed assignments, and presents disputed issues of material fact under which a jury could find for Plaintiff. Summary judgment is therefore denied with respect to this theory of interference.

### *FMLA Retaliation*

In addition to her interference claims, Plaintiff argues her discharge was in retaliation for taking FMLA leave. To establish a prima facie case of FMLA retaliation, Plaintiff must show: (1) she was engaged in an activity protected by the FMLA; (2) her employer knew she was exercising her FMLA rights; (3) after learning of her exercise of FMLA rights, the employer took an adverse employment action; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Killiam v. Yorozu Auto. Tenn.*, 454 F.3d 549, 556 (6th Cir. 2006). Defendants do not dispute the first three elements (Doc. 15 at 18). Defendants also acknowledge that the Sixth Circuit has held that temporal proximity alone can, in certain circumstances, suffice to establish the fourth element (*id.*). *See DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). Here, Defendants suspended Plaintiff just days after she returned from FMLA leave and then terminated her

6

about two weeks later (Doc. 15-9). In the context of this case, the proximity of Plaintiff's termination constitutes indirect evidence of a causal connection.

Defendants put forward a legitimate, non-discriminatory reason for terminating Plaintiff -- she practiced outside her scope when she effectively "cancelled" an order written by Dr. Yoon for a patient and wrote an order not authorized by Dr. Yoon for another patient (Doc. 15 at 15–16). Plaintiff contends Defendants' reason is pretext because it has no basis in fact. *Manzer v. Diamond Shamrock Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff returned to work on May 10, 2011 and worked on the floor on May 11–12. She worked in the ICU on May 12 and rounded with Dr. Yoon (Vess Dep. at 147). Plaintiff testified she and Dr. Yoon spent a long time discussing the ventilation plan for the patient in Room 107 because the patient was being weaned slowly off the ventilator (*id.* at 147–48). Plaintiff testified Dr. Yoon gave her a verbal order for the patient in Room 107, which Plaintiff documented later (*id.* at 149). Plaintiff repeated the order back to Dr. Yoon, who agreed with it (*id.* at 150). Dr. Yoon left before Plaintiff documented the order (*id.* at 149). Plaintiff did not call Dr. Yoon to confirm the verbal order because doing so was unnecessary as Plaintiff "saw [Dr. Yoon] after [she] executed the changes and told [Dr. Yoon] the patient was fine, did well" (*id.* at 150). Plaintiff wrote the order in the patient's chart soon after she implemented Dr. Yoon's verbal order (*id.* at 150–51).

During the same shift, Plaintiff testified she also spoke with Dr. Yoon about the patient in Room 109 (*id.* at 151). Dr. Yoon wrote an order for the patient in Room 109 identical to the order verbally given Plaintiff for the patient in Room 107 (*id.* at 158). Plaintiff testified she thought the order for Room 109 was in error and believed Dr. Yoon may have confused the patient in Room 107 with the patient in Room 109, so Plaintiff crossed out the order for the patient in Room 109 and wrote

7

"error wrong patient" (*id.* at 159, 161). Plaintiff took this course of action to maintain the status quo until she could reach Dr. Yoon for clarification (*id.* at 160). Plaintiff attempted to call Dr. Yoon but was unable to reach her (*id.* at 160–61).

The next day, Dr. Yoon became upset with Plaintiff for not implementing her written order for Room 109 (*id.* at 166). Neeb testified that Dr. Yoon denied giving a verbal order for the patient in Room 107 and refused to sign the order Plaintiff wrote (Neeb Dep. at 65–67). Neeb further testified Dr. Yoon told her she had intended the order she wrote for the patient in Room 109 to be effectuated and was upset Plaintiff had not only cancelled that order but then wrote the order she intended for Room 109 in the chart for the patient in Room 107 (*id.* at 67).

Following the incident, Plaintiff was suspended with pay pending further investigation (*id.* at 56). Neeb and the facility's CEO, John Walsh, reviewed documentation about the incident and forwarded information about the incident to Defendants' corporate office (*id.* at 59, 75, 88–89, 157). Neeb, Walsh, Mary Ann Barker, Defendants' human resources director, and Gloria Skinner, Defendants' clinical services director, participated in a conference call to discuss the incident, at which time they determined Plaintiff would be terminated (*id.* at 147–49; Doc. 18, Barker Aff. at ¶¶ 6–10; Doc. 17, Skinner Aff. at ¶¶ 4–7). On May 27, Neeb told Plaintiff she was terminated for practicing outside her scope, and provided her with a written termination notice (Vess Dep. at 185; Doc. 15-9).

Plaintiff's testimony about the incident with Dr. Yoon creates an issue of fact inappropriate for summary judgment. Plaintiff's testimony posits that it was Dr. Yoon who made an error in confusing two patients, while Plaintiff followed Defendants' procedures and sought to maintain the status quo until the order for the patient in Room 109 could be clarified. Plaintiff also testified she

8

adhered to Defendants' policies when she repeated the order for Room 107 to Dr. Yoon and executed the order while Dr. Yoon was still present at the hospital.

Defendants argue that, in any event, Plaintiff's retaliation claim must be dismissed under the "honest belief" rule, which requires a plaintiff to show "more than a dispute over the facts upon which the discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001). The key inquiry is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (internal citation and quotation marks omitted). "As long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* at 285–86 (internal citations and quotation marks omitted).

Defendants have in place a progressive disciplinary protocol (Doc. 15-12 at 8–9). That protocol notes that while "[d]isciplinary situations will *generally* be dealt with through the progressive discipline process," there are "certain types of employee misconduct that are so serious they may justify immediate suspension or termination" (*id.*) (emphasis added). Plaintiff directs this Court to an internal incident report in which the incident received the lowest possible severity score (Doc. 32-9), arguing the incident in question, applying Defendants' own recitation of the facts, was not so severe to warrant immediate suspension or termination. Plaintiff argues the immediate suspension/termination, coupled with Plaintiff's testimony that Neeb (who initiated the disciplinary process and participated in the decision to terminate Plaintiff) was upset with her for taking leave and that co-workers had reported to her that Neeb had told others at the hospital that she was going to replace Plaintiff, create an issue of fact as to whether Defendants held an honest belief in their reason

9

for terminating Plaintiff. This Court agrees. Therefore, summary judgment is denied with respect to Plaintiff's FMLA retaliation claim.

**Count Two: Workers' Compensation Retaliation**

To maintain a claim under R.C. § 4123.90, Plaintiff must demonstrate: (1) she was injured on the job; (2) she filed a claim for workers' compensation; and (3) she was discharged by Defendants in contravention of Ohio law. *Wilson v. Riverside Hosp.*, 18 Ohio St. 3d 8, 10 (1985). Courts analyze workers' compensation retaliation claims under a burden-shifting framework, requiring an employer to articulate a legitimate, non-discriminatory reason for termination should the employee make out a prima facie case. *Cunningham v. The Kroger Co.*, 2006 WL 3230323, at *2 (Ohio Ct. App. 2006). Defendants argue Plaintiff has not established a nexus between her termination and her workers' compensation claim. Defendants cite *Sutton v. Tomco Machining, Inc.*, 129 Ohio St. 3d 153 (2011) for the proposition that under Ohio law, temporal proximity alone is insufficient. In *Sutton*, the Ohio Supreme Court explained that in the context of workers' compensation retaliation claims, "no presumption of retaliation arises from the fact that an employee is discharged soon after an injury;" instead, "the retaliatory nature of the discharge and its nexus with workers' compensation must be established by a preponderance of the evidence." *Id.* at 157.

Plaintiff was injured on February 8, 2011 and was granted thirteen weeks FMLA leave. During her leave, she applied for and received workers' compensation benefits. She returned to work on May 10, 2011, was suspended shortly after the May 12 incident involving Dr. Yoon, and terminated on May 27. Plaintiff points to the following evidence to prove the causation element -- (1) the temporal proximity of her return from leave and her suspension/termination; (2) Plaintiff's testimony that co-workers told her that Neeb said she was going to replace Plaintiff; (3) Plaintiff's

testimony that upon her return, Neeb told her "this will never happen again" (Vess Dep. at 93); and (4) Plaintiff's claim that Defendants changed her job description while she was on leave, allowing her to return to work only if she could perform all new duties contained in a 46-page job description.

This Court recognizes the Ohio Supreme Court's admonition that temporal proximity alone will not suffice for a workers' compensation retaliation claim. However, Plaintiff has cited evidence that her immediate supervisor was openly hostile to Plaintiff for the leave she took in connection with her work-related injury. This fact prevents this Court from granting summary judgment on this claim. Furthermore, Defendants' arguments concerning pretext and honest belief fail for the same reasons this Court earlier rejected them in connection with Plaintiff's FMLA retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docs. 14–15) is denied with respect to Count I - FMLA interference and FMLA retaliation and Count II - workers' compensation retaliation. Defendants' Motion is granted with respect to Count I - Plaintiff's discouragement theory of interference.

IT IS SO ORDERED.

        s/ *Jack Zouhary*
        JACK ZOUHARY
        U. S. DISTRICT JUDGE

March 15, 2013